UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LAMONTE DIXON, JR., #K-96013, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 11 C 6860 |
| | ) | |
| RONALD SCHAEFER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

Now before the Court is Defendants' Ronald Schaefer's ("Schaefer"), Brenda Thigpen's ("Thigpen"), Wendy Olsen-Foxon's ("Olsen-Foxon"), Nwadivtor Ifezue's ("Ifezue") and Tiffany Utke's ("Utke") (collectively "Defendants") motion for summary judgment under Federal Rule of Civil Procedure 56 on the limited issue of exhaustion. For the following reasons, the motion is granted as to all Defendants save Schaefer.

### BACKGROUND

Plaintiff, Lamonte Dixon ("Dixon") is an Illinois state prisoner. He has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983, claiming that Defendants, health care providers at the Stateville Correctional Center ("Stateville"), violated his constitutional rights by acting with deliberate indifference to his medical needs. Specifically, Dixon alleges that needed care for an injured finger was unduly

delayed. Schaefer was Stateville's medical director and staff physician. Thigpen and Olsen-Foxon were medical technicians, and Ifezue and Utke were nurses at the facility.

The following facts are taken from the parties' respective statements made pursuant to Northern District of Illinois Local Rule 56.1. On January 30, 2011, while housed at Stateville, Dixon slipped and fell while jumping into his top bunk. He struck his right hand against the toilet as he fell, injuring his middle finger. Over the next few days and weeks, Dixon claims, he showed his swollen hand to Schaefer and requested medical treatment during multiple health care appointments. Schaefer was dismissive of Dixon's concerns, telling Dixon to "give it time." Schaefer refused to provide any medical attention even though Dixon insisted that he had a broken bone. Dixon asked nurses and medical technicians to schedule an appointment on his behalf with a physician other than Schaefer, but they ignored his request. Dixon continued to see Schaefer, who did nothing for his hand. On March 15, 2011, a physician's assistant arranged for x-rays to be taken of Dixon's hand. An orthopedist determined on March 17, 2011 that Dixon's middle finger was fractured. Reparative surgery was performed on March 21, 2011.

On March 10, 2011, Dixon filed an emergency grievance regarding Schaefer's failure to treat his hand and his continuing need for treatment ("March 10th

grievance"). On March 17, 2011, Stateville's warden Marcus Hardy ("Hardy") issued a decision declining to treat the March 10th grievance as an emergency. Evidently, the grievance was then routed to Dixon's counselor for further consideration. Dixon filed no appeal, and denies that he ever received notice that the March 10th grievance was declined. In light of the surgery, Dixon's counselor informed him in her April 11, 2011, response to the March 10th grievance that she considered his medical concerns to have been resolved.

On June 8, 2011, Dixon filed a grievance regarding the need for physical therapy ("June 8th grievance"). On June 14, 2011, a Stateville counselor responded that there was a waiting list for physical therapy. Dixon concedes that the June 8th grievance is immaterial to this lawsuit.

Dixon was transferred to the Pontiac Correctional Center on October 19, 2011. On October 24, 2011, he filed a third grievance regarding Schaefer's alleged refusal to treat the injured finger or hand ("October 24th grievance"). In the grievance, Dixon reported that he had never received a response to his original grievance the previous March. Dixon filed the grievance directly with the Administrative Review Board ("ARB"). The ARB rejected the grievance without rendering a decision because Dixon did not file the grievance at the institutional level first.

Defendants now move for summary judgment on the limited issue of exhaustion.

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings, discovery, disclosures, and affidavits establish that there is no genuine issue of material fact, such that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Winsley v. Cook Cnty.*, 563 F.3d 598, 602-03 (7th Cir. 2009). A genuine issue of material fact exists when, based on the evidence, a reasonable jury could find in favor of the non-moving party. *Trinity Homes LLC v. Ohio Cas. Ins. Co.*, 629 F.3d 653, 656 (7th Cir. 2010). A genuine factual dispute must be supported with citations to the evidence in the record. *Leibforth v. Belvidere Nat'l Bank*, 337 F.3d 931, 934 (7th Cir. 2003). In considering a motion for summary judgment, a court construes all facts and draws all reasonable inferences in favor of the non-moving party. *Smith v. Hope Sch.*, 560 F.3d 694, 699 (7th Cir. 2010).

## DISCUSSION

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that prisoners exhaust all available administrative remedies before bringing a Section 1983 lawsuit. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). In order to satisfy the PLRA's exhaustion requirement, a prisoner "must take all steps prescribed by the prison's grievance system." *Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2001). If a prisoner fails to properly avail himself of the prison's grievance process, he may lose

his right to sue. *Id.* Exhaustion is an affirmative defense, and the burden of proof is on the defendant. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

The Illinois Department of Corrections ("IDOC") has established a grievance procedure that typically requires a prisoner to first attempt to resolve his problems with a counselor. *See* 20 Ill. Admin. Code § 504.810(a). If the prisoner is unable to resolve his issue this way, he may file a written grievance. *Id.* The prison's grievance officer may interview the prisoner or witnesses and further investigate the matter. *Id.* § 504.830(c). The grievance officer must then report her findings to the Chief Administrative Officer, the prison's warden, who renders a decision within two months after receipt of the grievance. *Id.* § 504.830(d). If the prisoner disagrees with the decision, he may appeal in writing to the Director of IDOC. *Id.* § 504.850(a). The ARB, as the IDOC Director's designee, determines whether a hearing is necessary to resolve the matter, or may issue a final determination. *Id.* § 504.850(f). At this point, the administrative process is complete.

However, the regulations also provide that an offender may request that a grievance be handled on an emergency basis by forwarding the grievance directly to the warden. *Id.* § 504.840. If the warden determines there is a substantial risk of imminent harm to the offender, the grievance is to be handled on an emergency basis. *Id.* § 504.840(a).

Dixon failed to exhaust his administrative remedies with respect to the June 8th grievance, as he failed to carry the process beyond filing the initial grievance to the Stateville counselor. Nor may Dixon's lawsuit proceed on the basis of the October 24th grievance, since the IDOC grievance procedure does not permit direct review by the ARB for the matters that Dixon complained of. *See id.* § 504.870.

Defendants also argue that Dixon failed to exhaust his administrative remedies with respect to the March 10th grievance. As Dixon concedes, this is true with respect to Defendants Thigpen, Olsen-Foxon, Ifezue, and Utke, as their names are not found anywhere in the March 10th grievance. *See id.* § 504.810(b) ("The grievance shall contain . . . the name of each person who is the subject of or who is otherwise involved in the complaint."). Hence, Dixon failed to exhaust his administrative remedies with respect to these Defendants. Their motion for summary judgment is therefore granted.

The same cannot be said of Schaefer, who was identified in the March 10th grievance. Instead, Schaefer argues that Dixon was required to proceed with the IDOC grievance procedure upon Hardy's denial, and that his failure to do so precludes this lawsuit. This argument is unpersuasive for two reasons. First, although the IDOC grievance procedure clearly sets forth a roadmap for prisoners to exhaust their administrative remedies, "[t]here is nothing in the current regulatory text

. . . that requires an inmate to file a new grievance after learning only that it will not be considered on an emergency basis." *Thornton v. Snyder*, 428 F.3d 690, 694 (7th Cir. 2005). Further, an inmate who files an emergency grievance "has no obligation to resubmit the grievance through normal channels, even if the warden concluded that expedited review was unnecessary." *Glick v. Walker*, 385 Fed. App'x 579, 583 (7th Cir. 2010); *Muhammad v. McAdory*, 214 Fed. App'x 610, 612-613 (7th Cir. 2007); *see also Johnson v. Ghosh*, No. 10 C 6897, 2011 WL 2604837, *4 (N.D. Ill. Jun. 30, 2011). Although the grievance form directed inmates to submit a regular grievance if no emergency had been substantiated, the governing regulations themselves do not dictate such a requirement. *See Ruiz v. Tillman*, No. 06 C 1975, 2009 WL 528680, at *5 (N.D. Ill. Feb. 25, 2009) (holding that inmate was not obligated to follow grievance procedures established by the prison, but rather those set forth in the Illinois Administrative Code). Schaefer fails to cite to any authority that requires prisoners to pursue any further action beyond filing an emergency grievance in order to exhaust his administrative remedies.

Second, even if Dixon were required to further pursue administrative remedies after filing his emergency grievance, a genuine issue of fact exists as to whether Dixon actually had notice of Hardy's denial of the March 10th grievance. A prison official's failure to respond to an inmate's grievance renders administrative remedies

"unavailable" and excuses the prisoner from pursuing them further. *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002). Here, Dixon claims that he never received notice of the March 17th denial of the grievance. Schaefer produces no evidence establishing otherwise. Because the record does not establish that Dixon was aware that Hardy denied the March 10th grievance, we cannot definitively state that the prison's administrative remedies were "available" to Dixon. *Porter*, 534 U.S. at 524. Summary judgment is not appropriate under these circumstances.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment on the limited issue of exhaustion is granted in part and denied in part. Thigpen, Olsen-Foxon, Utke, and Ifezue are dismissed as defendants pursuant to 42 U.S.C. § 1997e(a). The plaintiff may proceed only against defendant Schaefer, and only with respect to his claim that the doctor denied or delayed needed medical care for several weeks.

_____
Charles P. Kocoras
United States District Judge

Dated:   March 11, 2013