UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LAMONTE DIXON JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 11 C 6860 |
| | ) | |
| RONALD SCHAEFER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

# MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

This matter comes before the Court on the motion for summary judgment of Defendant Dr. Ronald Schaefer ("Dr. Schaefer") pursuant to Federal Rule of Civil Procedure 56 ("Rule 56"). For the following reasons, the Court denies Dr. Schaefer's motion for summary judgment.

## BACKGROUND

**I. Facts**

The following facts are taken from the parties' respective statements and exhibits filed pursuant to Northern District of Illinois Local Rule 56.1. The Court reviews each Local Rule 56.1 statement and disregards any argument, conclusion, or assertion unsupported by the evidence in the record. The parties do not dispute the facts below unless otherwise noted.

1

This case arises out of the allegedly inadequate medical treatment by a staff physician, Dr. Schaefer, at Stateville Correctional Center ("Stateville"). Dr. Schaefer is employed by Wexford Health Services ("Wexford"), which has a contract with the Illinois Department of Corrections ("IDOC") to provide medical care for inmates at IDOC facilities, including Stateville. Plaintiff Lamonte Dixon Jr. ("Dixon") has been incarcerated since 2003 for first degree murder and is currently an inmate at the Pontiac Correctional Center. At the time of the alleged occurrence, Dixon was incarcerated at Stateville. According to Dixon's disciplinary card, he has been disciplined for: (i) fighting on eight separate occasions; (ii) intimidation and threats on three separate occasions; and (iii) insolence on ten separate occasions.

Wexford has policies and procedures that set forth guidelines for the care and treatment of inmates. For instance, one policy states that "[a]ll inmates will have unimpeded access to all health care services at the facility." The process for implementing this policy includes "[t]he responsible health authority for the facility will ensure the timely efficient response to all inmates' health care needs." There are also policies in place for certain emergency care. Inmates may request medical attention by making verbal or written requests to prison staff.

On January 30, 2011, Plaintiff fell while trying to climb into his bunk, hitting his right hand on the toilet during the fall. Prior to February 1, 2011, Dixon was suffering from abnormal pneumonia-like symptoms. Dixon notified a medical technician of these complaints who, in turn, prepared a sick slip for him. Based on the

sick slip that was prepared in response to his complaints, Dixon was scheduled for an appointment in the Health Care Unit on February 1, 2011. After he checked in the Health Care Unit on February 1, 2011, Dixon was told that he was scheduled to see Physician Assistant LaTonya Williams ("Williams"). However, Williams was not available and Dr. Schaefer evaluated him instead, even after Dixon repeatedly requested to be seen by Williams. After some discussion, Dr. Schaefer decided not to evaluate Dixon and charted in a progress note, dated February 1, 2011, "inmate became belligerent and sullen when asked what problem he wanted to be seen for, and he said he wants to see Mrs. Williams. Uncooperative with interview." There is no mention of Dixon's hand injury in the progress note. The parties disagree over whether Dixon told Dr. Schaefer about his hand injury. They also dispute whether Dr. Schaefer ended the appointment because of Dixon's allegedly belligerent behavior or Dr. Schaefer's alleged concern for his safety.

On February 4, 2011, Dr. Schaefer conducted another appointment with Dixon after he complained of being sick for a week. The progress note reflects that Dixon was calm, unconcerned, and cheerful with the medical staff. Dr. Schaefer also noted that Dixon was not in any acute distress on this date. The parties dispute whether Dixon complained about his hand injury to Dr. Schaefer at this appointment and the accuracy of the progress note. At the conclusion of this appointment, Dr. Schaefer ordered antibiotics, Tylenol for pain control and to reduce fever, a chest x-ray to rule out pneumonia, and a return date two weeks later.

In the record, there is also another progress note dated February 4, 2011 from a medical staff member at Stateville. This progress note states that Dixon was sick for a week and claims he had been coughing up blood. The medical staff member concludes that Dixon's symptoms indicate he may be suffering from a possible upper respiratory infection. There is no mention of Dixon's hand injury in this note. Dixon disputes the date of this progress note and its contents.

On February 24, 2011, Dr. Schaefer evaluated Dixon at the Asthma Clinic with no notations of a hand injury or deformities from Dr. Schaefer or the nurse who took his vital signs. Also on February 24, 2011, Dixon submitted a request for protective custody, where he made specific reference to the prison's "failure to protect". Dixon made no mention of the alleged deliberate indifference to his medical needs. According to an email in the record, Dixon's request led to an internal investigation, which revealed that Dixon's request to transfer stemmed in part from an altercation on January 30, 2011 with members from his former gang. As part of the investigation, visible injuries from the altercation were ruled out. Dixon disputes the accuracy of the email's contents.

On February 28, 2011, Dixon prepared a grievance related to his commissary, which makes no mention of any right hand complaints. On March 10, 2011, Dixon prepared a grievance related to the alleged deliberate indifference to his right hand complaints. On March 15, 2011, Dixon was evaluated by Williams and complained that his right hand was in pain and throbbing. Williams' examination revealed a

deformity of Dixon's third metacarpal on the right hand, with the knuckle being displaced. Williams' March 15, 2011 progress note is the first documentation showing any complaint of right hand pain or deformity by Dixon. An x-ray confirmed that Dixon's finger was broken, requiring surgery.

After Dixon had surgery on his right hand, he returned to Dr. Schaefer for the removal of his surgical pins on April 20, 2011. During this appointment, Dixon took objection to the fact that Dr. Schaefer told him that the surgeon only ordered an exercise program and not physical therapy. The disagreement caused Dr. Schaefer to call a correctional officer to escort Dixon from his office. The parties dispute whether, during this incident, Dixon threatened Dr. Schaefer, telling him "I am going to shoot you" or "I am going to sue you." That same day, Dr. Schaefer wrote a disciplinary ticket against Dixon and Dixon was later found guilty of intimidation or threats, resulting in a sentence of three months segregation and a commissary restriction. In May of 2011, Dixon filed two grievances with the IDOC, alleging that Dr. Schaefer wrote the April 20, 2011 ticket in retaliation for Dixon's March 10, 2011 grievance.

Although Dixon quarrels over the existence of such, there are no sick slips, medical records, progress notes, or other documentation from January 30, 2011 through March 15, 2011 in Dixon's medical file about a hand injury. The record also lacks any documentation showing that Dr. Schaefer or any healthcare provider at Stateville knew of Dixon's hand injury from February 4, 2011 to February 24, 2011

5

when Dixon returned to the Asthma Clinic. However, Dixon's cellmate provides an affidavit stating that Dixon asked every nurse and "Med-Tech" who passed his cell for medical attention. This cellmate mentions Dixon's hand injury, but does not specify what Dixon asked to receive medical attention for in his affidavit.

## II. Procedural History

On September 28, 2012, Dixon filed a one-count amended complaint with this Court pursuant to 42 U.S.C. § 1983 ("Section 1983") against Dr. Schaefer, Brenda Thigpen, Wendy Olsen-Foxon, Nwadivtor Ifezue and Tiffany Utke for deliberate indifference of his medical needs. On March 11, 2013, the Court granted summary judgment on the limited issue of exhaustion as to all the other defendants except Dr. Schaefer. On December 23, 2014, Dr. Schaefer filed the instant motion for summary judgment pursuant to Rule 56.

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings, discovery, disclosures, and affidavits establish that there is no genuine issue of material fact, such that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The movant bears the initial burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The burden then shifts to the non-moving party to show through specific evidence that a triable issue of fact remains on issues on which the movant bears the burden of proof at trial. *Id.* at 325. The non-movant may not rest upon mere allegations in the pleadings or upon conclusory

statements in affidavits; it must go beyond the pleadings and support its contentions with documentary evidence. *Id.* A genuine issue of material fact exists when, based on the evidence, a reasonable jury could find in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, a court construes all facts and draws all reasonable inferences in favor of the non-movant. *Id.* at 255.

## DISCUSSION

Dixon contends that Dr. Schaefer was deliberately indifferent to his medical needs. The issue for the Court to determine is if there is a fact question concerning Dr. Schaefer's knowledge that there was a risk of harm to Dixon and whether Dr. Schaefer consciously disregarded that risk. *See Mathis v. Fairman*, 120 F.3d 88, 91 (7th Cir. 1997).

"Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when they display 'deliberate indifference to serious medical needs of prisoners.' " *Greeno v. Daley*, 414 F.3d 645, 652-53 (7th Cir.2005) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). Dixon must satisfy two elements to prove a deliberate indifference claim: one objective and one subjective. *McGee v. Adams*, 721 F.3d 474, 480 (7th Cir. 2013). For the objective element, Dixon must show that he had an objectively serious medical need. *Id.* "A medical need is considered sufficiently serious if the inmate's condition has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would

7

perceive the need for a doctor's attention." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (quoting *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011)). For the subjective element, Dixon must show that Dr. Schaefer was "aware of his serious medical need and [was] deliberately indifferent to it." *McGee*, 721 F.3d at 480.

Deliberate indifference requires more than negligence or even malpractice. *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008). "The federal courts will not interfere with a doctor's decision to pursue a particular course of treatment unless that decision represents so significant a departure from accepted professional standards or practices that it calls into question whether the doctor actually was exercising his professional judgment." *Pyles v. Fahim*, 14 C 1752, 2014 WL 5861515, at *5 (7th Cir. 2014) (internal citations omitted).

When Dr. Schaefer examined Dixon for his pneumonia-like symptoms on February 4, 2011, but did not provide him with any treatment for his injured hand, Dr. Schaefer claims that it was because Dixon did not make any complaints about his hand injury during the examination. Dr. Schaefer supports these claims with Dixon's medical records, which do not contain any notes that Dixon complained of a hand injury, along with Dr. Schaefer's testimony that it is a physician's duty to record the history given by the patient verbatim. Dixon claims that he told Dr. Schaefer about his hand injury on multiple occasions and that the injury itself was obvious based on the swelling involved.

After review of the material facts, there is an overarching issue as to whether the treatment Dixon received from Dr. Schaefer was so inadequate that it rose to the level of deliberate indifference. As for the objective element, the parties disagree over the obviousness of Dixon's broken hand, which later required orthopedic surgery. With respect to the subjective element, Dixon was a witness to his own treatment and is competent to testify about how Dr. Schaefer treated him. The record clearly contains "incompatible stories" from Dixon, Dr. Schaefer and Dixon's cellmate about what happened to Dixon when he sought medical treatment throughout February, March and April of 2011. *Smith v. Schaefer*, 525 F. App'x 440, 442 (7th Cir. 2013).

Specific facts about how Dr. Schaefer's treatment of Dixon at Stateville are both material and disputed, including, but not limited to, the following questions: (i) whether Dixon intimidated Dr. Schaefer when receiving medical treatment to the point where Dr. Schaefer feared for his safety; (ii) whether there is a policy at Stateville prohibiting medical staff from treating inmates for issues other than what is listed on their sick slips that Dr. Schaefer abided by; (iii) whether Dixon submitted dozens of verbal and written requests for medical attention for his hand injury; (iv) whether Dixon complained about his hand injury when he was treated on February 1, 2011 or February 4, 2011; and (v) whether Dixon's hand injury was so obviously a deformity to any and all medical staff that Dr. Schaefer would have noticed it if he conducted a full physical examination of Dixon.

The Court concludes by also addressing Dr. Schaefer's argument involving exhaustion, which we discussed in our previous opinion. Dixon argues that he did not receive notice of the warden's denial of his emergency grievance. Dr. Schaefer contends that Dixon admitted in his September 2, 2011 affidavit that he received notice about the denial of his March 10, 2011 grievance before filing suit on September 29, 2011. Thus, Dr. Schaefer insists that because Dixon had notice of the denial of his emergency grievance, it triggered his need to appeal the grievance through the normal grievance procedure, which Dixon never did. In Dixon's September 2, 2011 affidavit, he states that: (i) his March 10, 2011 grievance was delivered as an "emergency" and sent directly to the warden; (ii) the warden's response and date received are correct; and (iii) upon denial by the warden the grievance was sent to his counselor. However, the Court disagrees with Dr. Schaefer. We do not find that this affidavit has the same conclusive value that Dr. Schaefer purports it to have so that summary judgment should be granted. Dixon does not "admit" that he received notice about the denial, Dr. Schaefer simply infers such. It is up to a factfinder to decide whether Dixon received the warden's response to his March 10, 2011 emergency grievance, noting that it was not an emergency medical issue. This genuine issue of material fact, amongst others, is the reason the Court refuses to grant summary judgment in favor of Dr. Schaefer.

## CONCLUSION

For the foregoing reasons, the Court denies Dr. Schaefer's motion for summary judgment.

_____
Charles P. Kocoras
United States District Judge

Dated: 4/20/2015